

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA and the PEOPLE OF THE STATE OF NEW YORK *ex rel.* LYNNETH PURNELL, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| COMPASSIONATE CARE HOSPICE, INC., | ) ) |
| Defendant. | ) ) ) |
| THE STATE OF NEW YORK *ex rel.* LYNNETH PURNELL, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| COMPASSIONATE CARE HOSPICE OF NEW YORK, LLC and COMPASSIONATE CARE HOSPICE GROUP, LTD. | ) ) ) ) |
| Defendants. | ) ) ) ) |

**STIPULATION AND
ORDER OF
SETTLEMENT**


Civil Action No. 11-CV-7071
(JPO)

IT IS HEREBY STIPULATED AND ORDERED THAT the plaintiffs' claims against defendants in the above-referenced action are settled in accordance with the following terms and conditions:

## I.   PARTIES

This Settlement Agreement ("Agreement") is entered into between and among the State of New York (the "State"), acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit ("MFCU"), Defendants Compassionate Care Hospice of New

York, LLC ("CCH-New York") and Compassionate Care Hospice Group, Ltd. ("CCH Group") (defendants hereafter collectively referred to as "CCH") and Relator Lynneth Brooks[1] ("Relator" or "Brooks") (hereafter collectively referred to as the "Parties"), through their authorized representatives.

## II.   PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A. CCH-New York, a for-profit limited liability company organized under the laws of the State of New York, is a hospice provider as defined in Article 40 of the New York Public Health Law with its principal place of business located at 6661 Broadway, Bronx, New York 10471, and a satellite office in Brooklyn, New York, and provides hospice services to terminally ill Medicaid recipients in New York under MMIS number 02551206.

B. CCH Group is an Illinois corporation with its principal place of business in Parsippany, New Jersey, and has subsidiaries and/or affiliates in 22 states, including New York.

C. On or about October 6, 2011, Relator Lynneth Purnell filed a complaint under the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. §§ 3730 (b) – (h) and the New York False Claims Act, N.Y. State Fin. Law § 190(2), captioned United States of America and the People of the State of New York *ex rel.* Lynneth Purnell v. Compassionate Care Hospice, Inc., in the United States District Court for the Southern District of New York (Civil Action No. 11-7071) (Oetken, P.) (the "Relator's Complaint").

D. On November 14, 2014, the State of New York filed its Notice of Election to Intervene and Convert the Relator's Complaint and to file a Complaint-in-Intervention.

E. On November 14, 2014, the United States filed its Notice of Election to Intervene in Relator's Complaint and to file a Complaint-in-Intervention.

---

[1] Ms. Brooks is identified in the caption and in Relator's complaint as Lynneth Purnell.

F.  On February 2, 2015, the State filed its Complaint-in-Intervention captioned The State of New York ex rel. Lynneth Brooks v. Compassionate Care Hospice of New York, LLC and Compassionate Care Hospice Group, Ltd., in the United States District Court for the Southern District of New York (the "NY State Complaint").

G.  CCH submitted and caused to be submitted Medicaid Assistance Program ("Medicaid") claims for hospice services ("Medicaid Claims") to fiscal agents of the State of New York pursuant to the Social Services Law and the Public Health Law of the State of New York provided during the period from May 2010 through September 2011 ("Claims Period").

H.  The aforesaid Medicaid Claims were relied upon by the State the pay CCH-New York for dates of service occurring during the Claims Period.

I.  The State contends that it has certain civil claims against CCH under the New York False Claims Act, N.Y. State Fin. Law §§ 189 et seq., other New York statutes and the common law, as specified in paragraph 14 below, for engaging in the following conduct, set forth more fully in the State Complaint:

> During the period for dates of service from May 2010 through September 2011, CCH, knowingly submitted and caused to be submitted claims for reimbursement to Medicaid for services purportedly rendered by CCH-New York, and received payment thereon, for hospice nursing services not rendered or inadequately provided by CCH-New York (the "Covered Conduct").

J.  On February 2, 2015, the United States filed its Complaint-in-Intervention against CCH-New York and CCH Group, alleging that between May 2010 and September 2011, with respect to claims submitted for services purportedly rendered by CCH-New York, CCH caused false and fraudulent claims for reimbursement from Medicare and Medicaid to be submitted for hospice nursing services not rendered or inadequately provided by CCH-New York (the "United States Complaint").

3

K. CCH is contemporaneously entering into an agreement with the United States to resolve the United States' claims arising from the Covered Conduct as delineated in the United States Stipulation and Order of Settlement and Dismissal ("United States Agreement").

L. Relator Lynneth Brooks claims entitlement under § 190 (6)(a) to an amount for reasonable expenses that the court finds to have been necessarily incurred by Relator, reasonable expenses, attorneys' fees and costs, but she and CCH have not agreed on the Relator's entitlement to, or the amount of those expenses, fees and costs, if any.

M. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties have reached a full and final mutually agreeable resolution of all claims asserted against the defendants in Relator's Complaint and the NY State Complaint, pursuant to the Terms and Conditions below.

## III.    TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

1.  CCH-New York and CCH Group consent to this Court's exercise of personal jurisdiction over each of them.

2.  CCH-New York agrees to pay to the United States and the State a total of Six Million dollars ($6,000,000.00) in settlement of claims concerning Medicare and the New York State Medicaid Program.  Of that total, the amount of One Million Six Hundred Eighty Thousand dollars ($1,680,000.00) represents settlement of claims concerning the New York State Medicaid Program (referred herein as the "Total Medicaid Settlement Amount").

3.  From the Total Medicaid Settlement Amount, CCH-New York shall pay to the State the

sum of One Million Eight Thousand dollars ($1,008,000.00) (the "New York State Settlement Amount"). The New York State Settlement Amount shall be paid pursuant to the following terms:

    a. The first payment, in the amount of One Hundred Thousand Eight Hundred dollars ($100,800.00), shall be made within 60 days of the Effective Date of this Stipulation and Order (the "Initial State Payment"). The Initial State Payment shall be made by electronic funds transfer pursuant to written instructions to be provided by MFCU; and

    b. Over the period of the next five (5) consecutive years, CCH-New York will pay the remaining balance of Nine Hundred Seven Thousand Two Hundred dollars ($907,200.00) plus compound interest thereon accruing at a rate of 2.0% per annum in 20 quarterly installment payments, each in the amount of Forty Five Thousand Three Hundred Sixty dollars ($45,360.00) plus interest thereon (the "State Installment Payments"), starting on June 30, 2015, as follows:

| Payment to the State | Due on or Before |
|---|---|
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Seven Thousand Six Hundred Ninety Nine dollars and Seventy-One cents ($7,699.71) | June 30, 2015 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Four Thousand Three Hundred Forty One dollars and Sixty-Four cents ($4,341.64) | September 30, 2015 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Four Thousand One Hundred | December 31, 2015 |

| | |
|---|---|
| Thirteen dollars and Fourteen cents ($4,113.14). | |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Three Thousand Eight Hundred Forty Two dollars and Forty cents ($3,842.40). | March 31, 2016 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Three Thousand Six Hundred Sixteen dollars and Thirty-Eight cents ($3,616.38). | June 30, 2016 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Three Thousand Four Hundred Twenty Seven dollars and Sixty-One cents ($3,427.61). | September 30, 2016 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Three Thousand One Hundred Ninety Nine dollars and Eleven cents ($3,199.11). | December 31, 2016 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Two Thousand Nine Hundred Six dollars and Two cents ($2,906.02). | March 31, 2017 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Two Thousand Seven Hundred Twelve dollars and Twenty-Nine cents ($2,712.29). | June 30, 2017 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Two Thousand Five Hundred Thirteen dollars and Fifty-Eight cents ($2,513.58). | September 30, 2017 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Two Thousand Two Hundred Eighty Five dollars and Eight cents ($2,285.08). | December 31, 2017 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Two Thousand Eleven dollars and Eighty-Six cents ($2,011.86). | March 31, 2018 |
| Forty Five Thousand Three Hundred Sixty | June 30, 2018 |

| | |
|---|---|
| dollars ($45,360.00), plus interest in the amount of One Thousand Eight Hundred Eight dollars and Nineteen cents ($1,808.19). | |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of One Thousand Five Hundred Ninety Nine dollars and Fifty-Five cents ($1,599.55). | September 30, 2018 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of One Thousand Three Hundred Seventy One dollars and Five cents ($1,371.05). | December 31, 2018 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of One Thousand One Hundred Seventeen dollars and Seventy cents ($1,117.70). | March 31, 2019 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Nine Hundred Four dollars and Ten cents ($904.10). | June 30, 2019 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Six Hundred Eighty Five dollars and Fifty-Two cents ($685.52). | September 30, 2019 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Four Hundred Fifty Seven dollars and Two cents ($457.02). | December 31, 2019 |
| Forty Five Thousand Three Hundred Sixty dollars ($45,360.00), plus interest in the amount of Two Hundred Twenty Six dollars and Two cents ($226.02). | March 31, 2020 |

CCH-New York shall make each such State Installment Payment of the New York State

Settlement Amount by electronic funds transfer pursuant to written instructions to be provided

by MFCU.

    4.   CCH-New York shall have the right to pre-pay the entire balance due without penalty

and may tender payments in amounts greater than those stipulated in Paragraph 3. CCH-New York shall also have the right to transfer its payment obligations to CCH Group, provided that CCH Group consents in writing to such a transfer and the State is given 30 days' notice of such a transfer. Upon any such transfer, CCH Group agrees to adhere to all payment terms in this Agreement, including but not limited to those in Paragraph 3. If at any point CCH elects to pay the entire outstanding balance of the New York State Settlement Amount, CCH will not be required to pay remaining interest amounts (which are reflected in the payment schedule). If CCH elects to pre-pay part, but not all of the New York State Settlement Amount, the Parties agree that the payment schedule will be revised, within thirty (30) days of the partial pre-payment, or as soon thereafter as practicable, to reflect the lower principal amounts due and the resulting lower interest payments.

5. In consideration for the State's agreement to accept the State Installment Payments as delineated in Paragraph 3.b above, CCH-New York and CCH Group shall provide the State with a Consent Judgment, in the form attached hereto as Attachment A, against CCH-New York and CCH Group in the amount of One Million Eight Thousand dollars ($1,008,000.00), less any payments made prior to default, as to the State of New York. In the event the New York State Settlement Amount is not timely paid in full in accordance with the terms set forth in Paragraph 3 above, CCH consents to entry of the Consent Judgment as against both CCH-New York and CCH Group thereon in favor of the State without further notice. The State, in its sole discretion, may exercise any rights granted by law or in equity to collect on the debt. CCH-New York and CCH Group agree not to contest any consent judgment, offset, or any collection action undertaken by the State pursuant to this paragraph, either administratively or in any state or

federal court. The State shall, in its sole discretion, take all measures available to it to execute on the consent judgment.

6.   CCH shall be in default of this Agreement if CCH-New York fails to pay any or all of the New York State Settlement Amount, including a failure to pay all or any portion of the Initial State Payment or all or any portion of each State Installment Payment of the New York State Settlement Amount, on or before the due date of any said Payment as set forth in Paragraphs 3.a or 3.b above ("Default").   In the event of a Default, the Initial State Payment and/or State Installment Payment of the New York State Settlement Amount shall be immediately due and payable, and interest shall accrue on the remaining unpaid New York State Settlement Amount at a rate of 9% per annum compounded daily until the Default is cured.  In the event of a Default, the State will provide written notice of the Default, to be sent by first-class mail to the undersigned attorney for CCH.  If the Default is not cured in fifteen (15) calendar days after delivery of the notice of the Default, the State may at its sole option declare or do any or all of the following:

    a.   Execute on the consent judgment provided under Paragraph 5 above;

    b.   Reinstitute an action or actions against CCH-New York, CCH Group and any other person, in this court through the New York State Complaint or an amended pleading;

    c.   Seek specific performance of the Agreement;

    d.   Rescind its agreement to this Stipulation and Order and pursue all available remedies;

    e.   Any dismissals agreed to by the State shall be null and void, and the State may declare the New York State Settlement Amount, referenced in Paragraph 3

above, less any payments already made, immediately due and payable, with unpaid amounts bearing the Default rate of interest of nine percent (9%) until payment of the New York State Settlement Amount plus said interest, is made in full;

f. Offset the remaining unpaid balance of the State Settlement Amount from any amounts due and owing CCH-New York by any department, agency or agent of the State at the time of Default, which CCH-New York hereby agrees to and waives any administrative, judicial or other remedies; or

g. Exercise any other rights granted by law, or under the terms of this Agreement, or recognizable at common law or in equity.

Acceptance by the State of late payment with interest shall not cure any other separate and distinct default hereunder.

7. In the event that the State opts to reinstitute an action pursuant to Paragraph 6.b or to rescind its agreement to this Stipulation and Order pursuant to Paragraph 6.d, CCH-New York and CCH Group expressly agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that relate to the Covered Conduct, except to the extent such defense was available on the Effective Date of this Agreement.

8. In the event the State rescinds its agreement to this Stipulation and Order or reinstates an action concerning the Covered Conduct, CCH-New York and CCH Group further waive and will not assert any defenses they may have to any action relating to the Covered Conduct to the extent that such defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the United States Constitution, or under the

Excessive Fines Clause in the Eighth Amendment of the United States Constitution, this Agreement bars a remedy sought in such action.

    9.  In the event that the State seeks remedies for collection or enforcement of CCH's obligations hereunder, and the State substantially prevails in its collection or enforcement action, CCH agrees to pay and shall be responsible for all costs and expenses incurred by the State in connection with that action.

    10. CCH admits, acknowledges and accepts responsibility for the following facts:

        a.  Between May 2010 and September 2011, CCH-New York, at its Bronx location, did not treat certain of its patients according to an individualized plan of care;

        b.  Between May 2010 and September 2011, CCH-New York, at its Bronx location, did not adequately maintain a system of communication and integration among its interdisciplinary team, to ensure that plans of care were being followed for each patient;

        c.  Between May 2010 and September 2011, CCH-New York, at its Bronx location, failed to make certain nursing services routinely available on a 24-hour basis, 7 days a week;

        d.  Between May 2010 and September 2011, CCH-New York, at its Bronx location, failed, in certain instances, to ensure that its nursing services were provided in accordance with the plan of care;

        e.  Between May 2010 and September 2011, CCH-New York, at its Bronx location, failed to maintain adequate clinical records; and

f.  Between July 2010 and April 2011, CCH Group failed to provide sufficient oversight of CCH-New York's Bronx location to ensure that the compliance audit results for that location reflected adherence to all applicable regulations.

11. CCH shall cooperate and participate fully in any criminal, civil or administrative investigation or prosecution of former CCH-New York officers or employees, by the State or any government agency or entity, related to the Covered Conduct.

**RELEASES**

12. Subject to the exceptions in Paragraph 14 below (concerning excluded claims), in consideration of the obligations of CCH set forth in this Stipulation and Order of Settlement, conditioned upon payment in full by CCH of the New York State Settlement Amount, and subject to Paragraph 29 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Stipulation and Order of Settlement), the State agrees to release CCH-New York, CCH Group, and all of CCH Group's current officers, directors, employees, shareholders, and assigns from any civil claim arising from the Covered Conduct that the State has or may have against CCH-New York and CCH Group under the New York False Claims Act, N.Y. State Fin. Law §§ 189 *et seq.*, Executive Law § 63(12), Social Services Law § 145-b, or any other state law, or common law or equity, including equitable theories of payment by mistake, disgorgement, unjust enrichment, breach of contract and fraud. This Paragraph does not release any former officers or employees of CCH-New York from any liability of any kind related to the Covered Conduct.

13. Conditioned upon payment in full by CCH-New York of the New York State Settlement Amount, Relator, on behalf of herself, her heirs, successors, attorneys, agents and assigns, fully and finally releases, waives and forever discharges CCH and its officers, agents

12

and employees from any claims or allegations Relator has asserted or could have asserted,

arising from the Covered Conduct against CCH under the New York False Claims Act, N.Y.

State Fin Law §§ 189 *et seq.*, provided, however, that nothing in this Stipulation shall preclude

Relator from seeking to recover from CCH attorneys' fees, expenses and costs under the New

York False Claims Act, N.Y. State Fin. Law §190 (6)(a).

14. Notwithstanding any term of this Agreement, including the releases provided in

Paragraphs 12 and 13 above, specifically reserved and excluded from the scope and terms of this

Agreement as to any entity or person are the following claims of the State:

> a. Any civil, criminal or administrative liability arising under New York Tax
> Law;
>
> b. Any civil liability that CCH or any of CCH Group's current officers, directors,
> employees, shareholders, and assigns has or may have under any state statute,
> regulation or rule not covered by this Agreement;
>
> c. Any criminal liability;
>
> d. Any administrative liability, including mandatory or permissive exclusion
> from the Medicaid program;
>
> e. Any liability to the State (or its agencies) for any conduct other than the
> Covered Conduct;
>
> f. Any liability which may be asserted, directly or indirectly, by private payors
> or insurers, including those that are paid by the State of New York Medicaid
> Program on a fully capitated basis; and
>
> g. Any liability based on obligations created by this Agreement.

15. CCH-New York and CCH Group fully and finally release the State, its agencies,

current and former employees, servants, and agents from any claims (including attorneys' fees, costs and expenses of every kind and however denominated) that CCH-New York and CCH Group have asserted, could have asserted, or may assert in the future against the State, its agencies, current and former employees, servants, and agents related to the matters covered by the Covered Conduct,   Relator's Complaint, the State's investigation and any prosecution thereof, New York State's Complaint and this Agreement.

16. In consideration of the obligations of the Relator set forth in this Agreement, CCH on behalf of itself, and its officers, agents and employees fully and finally releases, waives and forever discharges Relator and her respective heirs, successors, attorneys, agents, and assigns from any claims that CCH has asserted, could have asserted, or may assert in the future against Brooks and her heirs, successors, attorneys, agents, and assigns related to the Relator's Complaint and Relator's investigation and prosecution thereof.

17. Brooks and her heirs, successors, attorneys, agents, and assigns shall not to object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to N.Y. State Fin. Law § 190(5)(b)(ii) and, Brooks, for herself and for her heirs, successors, attorneys, agents, and assigns, fully and finally releases, waives, and forever discharges the State, its officers, agents, and employees, from any claims arising from or relating to N.Y. State Fin. Law § 190, from any claims arising from the filing of the Relator's Complaint, from any other claims for a share of the New York State Settlement Amount, and in full settlement of any claims Brooks may have against the State under this Agreement.  This Agreement does not resolve nor in any manner affect any claims that the State has or may have against Brooks arising under the State's tax laws and as otherwise specified in Paragraph 14, or any claims arising under this Agreement.

**PAYMENT TO RELATOR**

18. Contingent upon the State receiving the full amount of the Initial State Payment and the full amount of each of the State Installment Payments of the New York State Settlement Amount as set forth in Paragraph 3 above, within thirty (30) days after the State's receipt of the Initial State Payment and each of the State Installment Payments, the State agrees to pay the Relator a sum of money equal to seventeen and a half percent (17.5%) of each of these payments. The State's obligation to pay Relator pursuant to this paragraph is conditioned upon the State's actual receipt of the full payment due from CCH-New York, as set forth in Paragraph 3. If the State does not receive the full amount of these payments, the State agrees to pay Relator a sum of money equal to seventeen and a half percent (17.5%) of the amount of the payments that the State actually receives from CCH-New York. Each such payment shall be mailed pursuant to written instructions to be provided by Relator.

19. Under no circumstances shall the State have any liability to Relator or Relator's attorney's except as set forth in Paragraph 18. The State in no way promises or guarantees Relator, nor is liable to Relator for, the collection of payment of any funds pursuant to this Agreement or the payment of any relator's share except as provided herein for funds actually collected and received by the State. Under no circumstances shall the State be required to exercise any authority under this Agreement or any other power or authority for the benefit of the Relator.

**OTHER PROVISIONS**

20. CCH-New York hereby agrees not to offer or accept an offer to sell all or any part of its business operations without giving thirty (30) days prior notice to the Attorney General, who, in his sole discretion, may require a security mechanism to ensure payments due under this

Agreement. Should all or any portion of CCH-New York's business be sold on or before full payment to the State of the New York State Settlement Amount pursuant to Paragraph 3 above, payment of the New York State Settlement Amount shall be accelerated and shall be paid to the State upon closing of such sale. Further, no current or former officer, director, employee, member, manager or shareholder of CCH-New York may accept or receive any remuneration or consideration relating to any such sale, including, but not limited to, any portion of the proceeds of such sale, directly or indirectly, until the New York State Settlement Amount is paid in full.

21. CCH-New York has provided sworn financial disclosure statements ("Financial Statements") to the State and the United States, and the State has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. CCH-New York warrants that the Financial Statements are complete, accurate, and current. If the State learns of asset(s) in which CCH-New York had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the State learns of any misrepresentation by CCH-New York, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $200,000 or more, the State may at its option: (a) rescind this Agreement and reinstate its suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full State Settlement Amount plus one hundred percent (100%) of the value of the net worth of CCH-New York that was previously undisclosed. CCH-New York agrees not to contest any collection action undertaken by the State pursuant to this provision, and immediately to pay the State all reasonable costs incurred in such an action, including attorneys' fees and expenses.

22. In the event that the State, pursuant to Paragraph 21 (concerning disclosure of

16

assets), above, opts to rescind this Agreement, CCH agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the State within sixty (60) calendar days of written notification to CCH that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement.

23. This Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by Medicaid, or any state payer, related to the Covered Conduct; and CCH agrees not to resubmit to Medicaid or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denial of claims.

24. CCH agrees that all costs incurred by or on behalf of itself and any associated person or entity in connection with (1) the investigation conducted by MFCU; (2) CCH's investigation and defense of this matter (including attorneys' fees and expenses); (3) the negotiation and performance of this Agreement; (4) the payment pursuant to this Agreement; (5) preparing and submitting any reports required under this Agreement; and (6) the negotiation of, and obligations undertaken pursuant to any Corporate Integrity Agreement with the U.S. Department of Health and Human Services' Office of the Inspector General ("HHS-OIG"), are unallowable costs on government contracts and under the Medicaid Program. CCH will not charge such unallowable costs directly or indirectly to the Medicaid Program, or seek payment for such unallowable costs through any cost report, cost statement, information statement, or payment request submitted by any Medicaid Provider to the Medicaid Program. CCH further agrees that within ninety (90) days of the entry of this Agreement, it will identify to Medicaid fiscal agents any unallowable

17

costs included in payments previously sought from the New York State Medicaid Program, including, but not limited to, payments sought in any cost reports, cost statement, information reports, or payment requests already submitted by CCH, and will request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of that unallowable costs. CCH agrees that the State, at a minimum, will be entitled to recoup from CCH any overpayment plus applicable interest and penalties as a result of the inclusion of such unallowable costs on previously-submitted cost reports, cost statements, information reports, or payment requests.

25. This Agreement is intended to be for the benefit of the Parties to this Agreement only, and by this instrument the Parties to this Agreement do not release any claims against any other person or entity, except as expressly provided by this Agreement.

26. CCH agrees that it will waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

27. CCH shall maintain custody of, or make arrangements to have maintained, all documents and records related to the Covered Conduct for a period of six years after completion of the payment of the New York State Settlement Amount or the period required by 18 N.Y.C.R.R. § 504.3 and any applicable provider manual, whichever is later.

28. CCH expressly warrants that it has reviewed its financial situation and that it is currently solvent within the meaning of 11 U.S.C §§ 547(b)(3), and that it currently believes it will remain solvent following its payment to the United States of the U.S. Settlement Amount, due under the settlement agreement that CCH is entering into with the United States regarding

18

this action, and to the State of the New York State Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to CCH within the meaning of 11 U.S.C. § 547(c) (1), and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which CCH was or became indebted to on after the date of this transfer, all within the meaning of 11 U.S.C. § 548(a) (1).

29. If within ninety-one (91) days of the Effective Date of this Agreement or of any payment made under this Agreement, CCH commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of CCH debts, or seeking to adjudicate CCH as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for CCH or for all or any substantial part of CCH assets, CCH agrees as follows:

    a. CCH shall provide the MFCU Deputy Attorney General immediate notice by overnight delivery, followed by postage prepaid mail at the address contained in paragraph 46 herein.

    b. Payment of the New York State Settlement Amount shall be accelerated and the full amount deemed due and owing.

c.  CCH's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and CCH shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) CCH's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) CCH was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payments made to the United States or the State; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to CCH.

d.  If any of CCH's obligations hereunder are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the State, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against CCH for the claims that would otherwise be covered by the releases provided in Paragraphs 12 and 13, above. CCH agrees that (i) any such claims, actions, or proceedings brought by the State are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this paragraph, and CCH shall not argue or otherwise contend that the State's claims, actions, or proceedings are subject to an automatic stay; (ii) CCH shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppels, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the State within sixty (60) calendar days of written notification to CCH that the releases have been rescinded

20

pursuant to this paragraph, except to the extent such defenses were available on the Effective Date of this Agreement, and (iii) the State has a claim against CCH in the amount no less than Three Million Twenty Four Thousand dollars ($3,024,000.00) plus civil penalties to be determined by the Court, and the State may pursue its claim in the case, action or proceeding referenced in the first clause of this paragraph, as well as any other case, action or proceeding.

e.  CCH acknowledges that its agreements in this paragraph are provided in exchange for valuable consideration provided in this Agreement.

30. Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

31. This Agreement is governed by the laws of the State of New York without regard to choice of law or conflict of laws principles. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement, including any dispute regarding CCH's payment of Relator's attorneys' fees, expenses, and costs, will be the United States District Court for the Southern District of New York. The State does not waive any objection it may have that a claim against CCH for payment by the State is properly vested in the New York State Court of Claims.

32. Any failure by the State to insist upon the strict performance of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and the State, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Agreement.

33. If any part of this Agreement shall for any reason be found or held invalid or

21

unenforceable by any court of competent jurisdiction other than payment of the Total Medicaid Settlement Amount or the New York State Settlement Amount, such invalidity or unenforceability shall not affect the remainder of this Agreement, which shall survive and be construed as if such invalid or unenforceable part had not been contained herein.

34. The terms of this Agreement shall remain effective notwithstanding the death or incapacity of any person, or any appeal, collateral attack, or any challenge to any criminal charge, conviction, plea or sentencing of any person, including but not limited, to the reversal, modification, or dismissal of all or any portion of such charge, conviction, plea or sentence, or the charging, conviction, plea or sentencing of any other person.

35. This Agreement constitutes the complete agreement between the Parties with respect to the Covered Conduct only.  This Agreement may not be amended, changed, modified or waived except in writing signed by the Party or Parties affected by said amendment, change or modification.

36. CCH acknowledges and represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever and upon due deliberation with the advice of counsel.

37. Brooks acknowledges and represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever, and that the Relator has entered into this Agreement upon due deliberation with the advice of counsel.

38. The undersigned individuals signing this Agreement on behalf of CCH and Brooks represent and warrant that they are authorized, respectively, by CCH and Brooks to execute this Agreement.  The undersigned Special Assistant Attorney General represents that she is signing this Agreement in her official capacity and that she is authorized to execute this Agreement.

39. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

40. This Agreement is binding on CCH successors, transferees, heirs and assigns.

41. This Agreement is binding on Brooks' successors, transferees, heirs and assigns.

42. The captions in this Agreement are provided for reference only and are not operative terms of this Agreement.

43. For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

44. CCH agrees not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in this Agreement or creating the impression that this Agreement is without factual basis.  Nothing in this paragraph affects CCH's: (a) testimonial obligations; or (b) right to take legal or factual positions in defense of litigation or other legal proceedings to which the State is not a party.

45. Subject to the exceptions set forth in this Stipulation and Order, and in consideration of the obligations of CCH as set forth in this Stipulation, and conditioned upon CCH's full compliance with the terms of this Stipulation, including full payment of the New York State Settlement Amount in accordance with Paragraph 3, the State shall dismiss with prejudice the claims against CCH-New York and CCH Group in the New York State Complaint.

46. Any notices pursuant to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by overnight delivery, followed by postage prepaid mail, and shall be addressed as follows:

23

IF TO THE ATTORNEY GENERAL and the STATE:

New York State Attorney General
Medicaid Fraud Control Unit
Attn: Deputy Attorney General
Medicaid Fraud Control Unit
120 Broadway
New York, New York 10271
IF TO CCH-New York and CCH Group:

Sean Cenawood, Esq.
Dentons US, LLP
1221 Avenue of the Americas
New York, New York 10020

and

Jennifer O'Neill, General Counsel
CCH
200 Lanidex Plaza, Suite 2101
Parsippany, New Jersey 07054

IF TO RELATOR:

Benjamin Bianco, Esq.
Frank & Bianco, LLP
275 Madison Avenue
New York, New York 10016

47. This Agreement is effective on the date that it is approved by the Court and entered

into the Court's docket through an electronic filing notice recorded on ECF ("Effective Date of

this Agreement").

THE STATE OF NEW YORK

Dated:     February 2, 2015

                              ERIC T. SCHNEIDERMAN
                              Attorney General of the
                              State of New York

          By:     _____
                              Jill D. Brenner
                              Special Assistant Attorney General
                              Medicaid Fraud Control Unit
                              120 Broadway, 12th Floor
                              New York, NY 10271

## DEFENDANTS CCH-NEW YORK AND CCH GROUP

Dated:   January 26, 2015

CCH-NEW YORK

By: _____
Judith Grey
Member

Subscribed and sworn to before me this

26 day of January , 2015.

_____
Notary Public

CHRISTINE ST. JOHN
NOTARY PUBLIC OF NEW JERSEY
ID # 2365137
My Commission Expires 10/11/2017

My commission expires: _____

Dated:   January 26, 2015

CCH GROUP

By: _____
Milton Heching
CEO

Subscribed and sworn to before me this

26 day of January , 2015.

_____
Notary Public

CHRISTINE ST. JOHN
NOTARY PUBLIC OF NEW JERSEY
ID # 2365137
My Commission Expires 10/11/2017

My commission expires: _____

26

Dated:    January 26, 2015

Dentons US LLP

By:    Sean Cenawood, Esq.
Counsel for Defendant
1221 Avenue of the Americas
New York, NY 10020

**RELATOR LYNNETH BROOKS**

Dated:      January 23 2015

By: _____
      Lynneth Brooks
      Relator

Subscribed and sworn to before me this
23 day of ~January~, 2015.

_____
Notary Public

My commission expires: _____ 9/27/18

Dated:      January 23, 2015

VINCENT J DIMELLA
Notary Public - State of New York
No. 01DI6226632
Qualified in Westchester County
My Commission Expires Sept. 27, 2018

FRANK & BIANCO, LLP

By: _____
      Benjamin Bianco, Esq.
      Counsel for Relator
      275 Madison Avenue
      New York, NY 10016

**SO ORDERED**
On this 17 day of __February__, 2015

_____
HONORABLE PAUL J. OETKEN
United States District Judge

28

# ATTACHMENT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE STATE OF NEW YORK *ex rel.*<br>LYNNETH BROOKS,<br><br><br><br><br><br><br>Plaintiffs,<br><br>v.<br><br>COMPASSIONATE CARE HOSPICE OF NEW<br>YORK, LLC and COMPASSIONATE CARE<br>HOSPICE GROUP, LTD.,<br><br><br>Defendants. | **CONSENT JUDGMENT<br>AGAINST DEFENDANTS<br>COMPASSIONATE CARE<br>HOSPICE OF NEW YORK,<br>LLC AND COMPASSIONATE<br>CARE HOSPICE GROUP, LTD.**<br><br><br>Civil Action No. 11-CV-7071<br>(JPO) |

It appearing to the Court that plaintiff the State of New York (the "State"), acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit ("MFCU"); Defendants Compassionate Care Hospice of New York, LLC ("CCH-New York") and Compassionate Care Hospice Group, Ltd. ("CCH Group"); and Relator Lynneth Brooks (the "Relator") (hereafter collectively referred to as the "Parties"), through their authorized representatives, have resolved the matters in controversy between them and have consented to the terms of this judgment.

NOW, THEREFORE, based upon the advice and stipulation of the Parties, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED, AS FOLLOWS:

1. Upon agreement of the Parties, the Court hereby enters this Consent Judgment in the

principal amount of One Million Eight Thousand dollars ($1,008,000.00), less any payments made prior to default, as to the State of New York, and in so doing, incorporates by reference the Stipulation and Order of Settlement entered in this action in January, 2015.

2.  This Court shall retain jurisdiction to enforce the terms and conditions of this Consent Judgment.

3.  The Parties acknowledge that they have read the foregoing Consent Judgment, are aware of their right to a trial in this matter and have waived that right.

4.  Defendants CCH-New York and CCH Group have no defense, counterclaim or offset thereto, and do hereby confess judgment to the State of New York as a result of their failure to pay a settlement owed to the State to resolve claims arising the New York False Claims Act, N.Y. State Finance Law §§ 189 et seq.

5.  This confession of judgment is for debts now justly and truly due and owing to the State of New York.

6.  Defendants CCH-New York and CCH Group agree to the jurisdiction of the Court, and consent to entry of this Consent Judgment by the court, as set forth above.

7.  The Parties state that no promise of any kind or nature whatsoever (other than the terms of the Consent Judgment) was made to induce them to enter into this Consent Judgment, that they have entered into this Consent Judgment voluntarily, and that this Consent Judgment constitutes the entire agreement between the Parties, except as set forth in the Stipulation and Order entered in February, 2015.

DATED this ___ day of February, 2015.

2

**AGREED AND CONSENTED TO:**

      **DEFENDANT COMPASSIONATE CARE HOSPICE OF NEW YORK, LLC**

Dated:     _____, New York      By:    _____
         January \_\_\_, 2015                Judith Grey
                                                     Member

      **DEFENDANT COMPASSIONATE CARE HOSPICE GROUP, LTD.**

DATED:     _____, New York      By:    _____
         January \_\_\_, 2015                Milton Heching
                                                     CEO

**APPROVED AS TO FORM AND SUBSTANCE:**

      **THE STATE OF NEW YORK – PLAINTIFF**

Dated:     New York, New York      By:    _____
         January \_\_\_, 2015                JILL D. BRENNER
                                                   Special Assistant Attorney General
                                                   120 Broadway
                                                   New York, New York 10271

RELATOR LYNNETH BROOKS

Dated:     _____, New York      By:    _____
         January \_\_\_, 2015                BENJAMIN BIANCO, ESQ.
                                                   Frank & Bianco, LLP
                                                   275 Madison Avenue
                                                   New York, New York 10016

**SO ORDERED:**

On this _____ day of _____, 20\_\_.

_____
HONORABLE J. PAUL OETKEN
United States District Judge